IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**FRANKIE WASHINGTON,** *individually and as parent and next friend of K.W., a minor*,

*Plaintiff,*

*v.*

**JACKSON PUBLIC SCHOOL DISTRICT, et al.,**

*Defendants.*

CAUSE NO. 3:23-CV-197-CWR-LGI

## ORDER

Before the Court are the Defendants' *Motions to Dismiss*, *see* Docket Nos. 7, 11, and 14, the Plaintiff's responses in opposition, *see* Docket Nos. 17, 20, and 23, and the Defendants' replies. Docket Nos. 22, 25, and 26. Upon review, the motions will be granted in part and denied in part.

### I.     Factual and Procedural History

The following facts are alleged in Plaintiff Frankie Washington's complaint and, at this stage in the proceedings, are accepted as true.

Washington's daughter K.W. attended Wingfield High School, which is in the Jackson Public School District (hereafter "JPSD"). Docket No. 1-1 at 79. At all times relevant to this suit, K.W. was a minor child. *Id.* On November 2, 2021, K.W. was stopped in the hall by Defendant Ira Peterson, a Wingfield teacher. *Id.* at 80. When Peterson asked K.W. why she was not in class, K.W. replied that she was walking to the restroom. *Id.* After she entered the

restroom, K.W. exited the bathroom stall to find Peterson leaning against the sinks. *Id.*

Peterson approached K.W., "leaned over to her face as if he was going to say something in

[her] ear," and "began rubbing his hand up K.W.'s inner thigh until he touched private area."

*Id.*

Shocked and dismayed, K.W. told her cheerleading coach about the incident, who in

turn informed Wingfield's principal, Defendant Roderick Smith. *Id.* Washington alleges that

JPSD failed to investigate the incident further, failed to reprimand Peterson, and "did nothing

to ensure that K.W. did not have to encounter [] Peterson." *Id.* Due to K.W.'s distress,

Washington sought a Temporary Restraining Order against Peterson from the Hinds County

Chancery Court. *Id.* The court entered the order, barring Peterson from contacting K.W. *Id.*

Washington later filed this suit against Peterson, JPSD, Smith, and Defendant Errick

L. Green—JPSD's superintendent—in Mississippi state court. *Id.* at 3. The state court

dismissed Washington's claims with leave to amend. *Id.* at 75-76. Washington's subsequent

*Amended Complaint* added federal claims to her causes of action, *id.* at 85-88, which allowed

the Defendants to remove the case to this Court. Docket No. 1 at 1-2.

In her *Amended Complaint*, Washington asserts federal claims under 42 U.S.C. § 1983

against JPSD, Green, Smith, and Peterson in their individual and official capacities.[1] Docket

No. 1-1 at 85-88. First, Washington asserts that the Defendants acted under color of law to

deprive K.W. of her Fourteenth Amendment substantive due process right to be free from

physical sexual abuse. *Id.* at 85. Second, Washington avers that JPSD, Green and Smith are

---

[1] Washington's *Amended Complaint* divided her § 1983 claims into three headings: 1) "14th Amendment Substantive Due Process," 2) "Negligent Hiring, Training, Supervision, and Retention," and 3) "*Monell* Liability." Docket No. 1-1 at 85-88.

liable for negligently hiring, training, supervising, and retaining Peterson under § 1983, given that these Defendants "knew or should have known that Defendant Ira Peterson was not suitable for employment at Wingfield High School because he had been previously terminated from another educational institution for engaging in inappropriate conduct with students." *Id.* at 86. Third, Washington posits that JPSD, Green, and Smith "maintained a custom, practice and/or policy of violating students' civil rights." Docket No. 1-1 at 87-88. Washington alleges that the "Defendants' widespread unconstitutional customs and practices were deliberately indifferent to the constitutional rights of students like K.W. and allowed for the individually named defendants to deprive K.W of her rights under federal and state law." *Id*. at 88.

Washington also asserts several state law claims. She brings negligence, negligence per se, respondeat superior, and negligent infliction of emotional distress claims against JPSD, Green, and Smith in their official capacities. *Id.* at 81–84. She also brings assault and battery and intentional infliction of emotional distress claims against Peterson in his individual capacity. *Id.* at 84.

These claims are the subject of three different motions to dismiss. In the first, JPSD requests dismissal of Washington's state law claims against it. In the second, JPSD requests dismissal of the Plaintiff's federal claims against it. And in the third, Green and Smith request dismissal of the federal individual-capacity claims brought against them. Peterson, represented by his own counsel, has not moved to dismiss anything.

## II.    Legal Standard

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court accepts the plaintiff's factual allegations as true and makes reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must "contain a short and plain statement of the claim showing that the pleader is entitled to relief." *Id*. Though the plaintiff need not "plead detailed factual allegations," a successful complaint requires "more than an unadorned, the defendant unlawfully-harmed-me accusation." *Id*. A claim must be "plausible on its face," enabling the court to draw reasonable inferences that the defendant is liable for the misconduct alleged. *Id*.

## III.    Discussion

### A.    Official Capacity Claims under § 1983

To state a claim under § 1983, a plaintiff must "[a]llege a violation of a right secured by the Constitution or laws of the United States and [] demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000) (parenthesis omitted). When allegations are raised against a party in their official capacity under § 1983, the plaintiff must satisfy the elements required to establish state liability. That is because § 1983 "[c]laims asserted against officers in their official capacities are really claims against the government entity." *Goodman v. Harris Cty.*, 571 F.3d 388, 396 (5th Cir. 2009). Thus, "[i]n any case in which a defendant government official is sued in his individual and official capacity, and [a governmental entity] is also sued,

4

there potentially exists an overlapping cause of action. The official-capacity claims and the

claims against the governmental entity essentially merge." *Turner v. Houma Mun. Fire & Police*

*Civil Serv. Bd.*, 229 F.3d 478, 485 (5th Cir. 2000).

In this case, Washington has sued Green, Smith, and Peterson in their official

capacities, as well as JPSD. These are overlapping claims. Accordingly, her official-capacity

claims against Green, Smith, and Peterson merge with her claims against JPSD.

### 1.    Negligence under § 1983

In her *Amended Complaint*, Washington alleges that JPSD, Green, and Smith are liable

under § 1983 for negligently hiring, training, supervising, and retaining Peterson. Docket No.

1-1 at 85. Washington alleges that JPSD "knew or should have known that [] Peterson was

not suitable for employment at Wingfield High School because he had been previously

terminated from another educational institution for engaging in inappropriate conduct with

[a] student." *Id.* at 86. Further, Washington alleges without elaboration that JPSD "negligently

supervised" Peterson. *Id.* Washington asserts that negligence is cognizable under § 1983,

given that a municipality can be liable for its hiring, training, or supervisory practices when

the municipality acts with "deliberate indifference." Docket No. 18 at 6.

On review, the Court finds that Washington's federal negligence claims must be

dismissed, as negligence claims are not cognizable under § 1983. *See Eason v. Thaler*, 73 F.3d

1322, 1329 n.3 (5th Cir. 1996) ("[N]egligence is not a theory for which liability may be imposed

under section 1983."). In her arguments to the contrary, Washington has confused deliberate

indifference with negligence. Deliberate indifference "is a degree of culpability beyond mere

negligence or even gross negligence" which "must amount to an intentional choice, not

merely an unintentionally negligent oversight." *Shumpert v. City of Tupelo*, 905 F.3d 310 (5th Cir. 2018), *as revised* (Sept. 25, 2018) (cleaned up). Consequently, because negligence is not cognizable under § 1983, all negligence claims asserted by Washington under § 1983 will be dismissed.

### 2.    Fourteenth Amendment Substantive Due Process

Next, this Court turns to Washington's substantive due process claim against JPSD.

"[M]unicipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978)). An official policy may be shown by "a widespread practice that is so common and well-settled as to constitute a custom that fairly represents the city's policy." *Sweetin v. City of Texas City, Texas*, 48 F.4th 387, 392 (5th Cir. 2022) (citation and quotation marks omitted). Such a pattern requires similarity, specificity, and "sufficiently numerous prior incidents, as opposed to isolated instances." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850 (5th Cir. 2009) (citation and quotation marks omitted). "The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dept.*, 130 F.3d 162, 167 (5th Cir. 1997).

In her *Amended Complaint*, Washington alleges that JPSD implemented customs and practices which were "persistent and widespread so as to practically have the force of law" and which violated K.W.'s due process right to bodily autonomy. Docket No. 1-1 at 85 and 88. In alleging the widespread and persistent nature of the alleged customs and practices,

Washington points to two incidents where Wingfield employees allegedly sexually abused students. *Id.* at 88 (citing *Doe v. Jackson Public School District*, *et. al*, No. 3:21-CV-573-HTW-LGI (S.D. Miss. Sept 8, 2021) and *Floyd-Evans v. Moorehead*, No. 3:14-CV-214-DPJ-FKB (S.D. Miss. Sept. 16, 2016)). Washington also alleges that an unlawful custom is further demonstrated by JPSD's failure to train its employees, "fail[ure] to adequately investigate" its employees' backgrounds, and "fail[ure] to conduct a reasonable investigation in response" to K.W.'s complaint. *Id.* at 88-89.

In response, JPSD argues that two alleged incidents of sexual misconduct are numerically insufficient to establish the existence of an unlawful custom under Fifth Circuit caselaw.[2] Docket No. 15 at 12. Additionally, JPSD asserts that Washington failed to meet the pleading requirements necessary to allege that it failed to train its employees. *Id.* at 14.

On review, the Court finds that Washington has failed to state a plausible *Monell* claim, as she has not pointed to any government custom or policy that gave rise to the alleged constitutional violation.

First, two instances of alleged sexual misconduct by JPSD employees is not sufficiently numerous to constitute a custom "that fairly represents the [] policy" of JPSD. *Sweetin*, 48 F.4th at 392.[3] Additionally, Washington's allegation lacks the specificity necessary for this Court to find the existence of an official custom. Instead, she vaguely alleges that "Defendants have been involved in prior similar incidents wherein school employees sexually abused

---

[2] JPSD also notes that it has not been found liable for either of the two claims. Docket No. 15 at 12.

[3] Further, in *Floyd-Evans*, the district court found that JPSD was not liable for the sexual misconduct of a teacher because the moving force of the violation was not a government policy or custom. This means that counsel's briefing has offered only one instance allegedly demonstrating an unlawful custom, *Doe*, which itself is still pending in court. Docket No. 15 at 12.

students," Docket No. 1-1 at 88, failing her burden to describe an unlawful custom with

"specific facts." *Spiller*, 130 F.3d at 167.

Washington also did not demonstrate that JPSD promulgated an unlawful custom via

a failure to train its employees, as Washington did not meet the failure-to-train theory's

pleading standard.

> [A] failure-to-train theory requires a plaintiff to prove that 1) the
> [governmental entity] failed to train or supervise the officers involved; 2) there
> is a causal connection between the alleged failure to supervise or train and the
> alleged violation of the plaintiff's rights; and 3) the failure to train or supervise
> constituted deliberate indifference to the plaintiff's constitutional rights.

*Pena v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018). "In order for liability to attach

based on an inadequate training claim, a plaintiff must allege with specificity how a

particular training program is defective." *Trammell v. Fruge*, 868 F.3d 332, 345 (5th Cir. 2017)

(citation omitted).

Washington's attempt to establish an unlawful custom under a failure-to-train theory

cannot proceed. Among other things, Washington has failed to allege how the alleged

deficiencies caused K.W.'s alleged harm, given that the purported training deficiencies

concerned actions or omissions which transpired *after* K.W.'s injuries. *See* Docket No. 1-1 at

88 (where Washington's allegations included failure to train "principals and other employees

on how to provide counseling for a student who has been sexually abused by a teacher" and

"how to recognize and report inappropriate sexual behavior between a teacher and a

student").

Third, Washington's allegation that JPSD "fail[ed] to conduct a reasonable

investigation in response" to K.W.'s complaint does not establish the existence of an unlawful

custom. Again, given that this ostensible failure to investigate occurred *after* the alleged assault by Peterson, Washington has failed to explain how this failure by JPSD would have been the "moving force" behind K.W.'s injuries. *Piotrowski*, 237 F.3d at 578 (citation and quotation marks omitted).

Finally, Washington alleges that JPSD maintained an unlawful custom by "failing to adequately investigate the background and employment history of teachers." Docket No. 1-1 at 88. Here, she again provides a conclusory statement rather than the "specific facts" necessary to show a custom. *Spiller*, 130 F.3d at 167. In particular, Washington fails to point to previous instances of JPSD's alleged failure to investigate the background of its teachers. And while Washington alleges that JPSD "knew . . . Peterson was not suitable for employment at Wingfield High School because he had been previously terminated from another educational institution for engaging in inappropriate conduct with students," this single alleged failure by JPSD does not satisfy the numerosity requirement required to find an official custom.

For these reasons, Washington's official-capacity claims against JPSD will be dismissed.

## B.    Individual Capacity Claims

Washington has also brought § 1983 substantive due process claims against Green, Smith, and Peterson in their individual capacities. Because only Green and Smith have moved to dismiss, the Court will not evaluate Washington's individual claim against Peterson.

In her *Amended Complaint*, Washington states that Green and Smith are personally liable for violating K.W.'s substantive due process right to bodily integrity, as Green and

Smith "commenced to implement a custom, policy, or practice wherein the rights, privileges, or immunities of K.W. were violated." Docket No. 1-1 at 85.

Green and Smith argue that Washington "wholly fails to set forth any facts whatsoever that either Dr. Green or Mr. Smith personally violated her right to bodily integrity." Docket No. 8 at 7. As a result, Green and Smith argue that the individual claims against them should be dismissed on the grounds of qualified immunity. *Id.*

In response, Washington avers that she adequately pleaded her individual claims, repeating her justification that she "specifically alleged that [Green and Smith] commenced to implement a custom, policy, or practice" that violated K.W.'s rights. Docket No. 18 at 8.

In this Circuit,

> [a] supervisory school official can be held personally liable for a subordinate's violation of an elementary or secondary school student's constitutional right to bodily integrity in physical sexual abuse cases if the plaintiff establishes that: (1) the defendant learned of facts or a pattern of inappropriate sexual behavior by a subordinate pointing plainly toward the conclusion that the subordinate was sexually abusing the student; and (2) the defendant demonstrated deliberate indifference toward the constitutional rights of the student by failing to take action that was obviously necessary to prevent or stop the abuse; and (3) such failure caused a constitutional injury to the student.

*Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 454 (5th Cir. 1994) (en banc).

On review, the Court finds that Washington has failed to state a plausible individual-capacity claim against Green and Smith. She was required to specifically allege that the two Defendants knew about inappropriate sexual behavior by Peterson and failed to take action; that their failure to act demonstrated deliberate indifference to K.W.'s constitutional rights; and that their failure to act resulted in a constitutional injury. *Whitley v. Hanna*, 726 F.3d 631, 640 (5th Cir. 2013). Instead, Washington—seemingly confusing municipal and individual

liability—argues that Green and Smith implemented a "custom, policy or practice" that led

to K.W.'s violation. Because this standard can only be used to establish *Monell* liability against

a governmental entity, Washington did not adequately plead that Green and Smith can be

held personally liable for K.W.'s injury. The individual claims against these Defendants will

be dismissed.

### C.      State Law Claims

Because at least one federal cause of action remains against at least one Defendant, the

Court now turns to Washington's state law claims against JPSD.

Washington alleges several causes of action against JPSD and Green and Smith in their

official capacities, including negligence, negligence per se, respondeat superior, and

negligent infliction of emotional distress.[4]  Specifically, she asserts that JPSD breached its

duties to properly supervise students and employees, monitor students, provide a safe

environment for students, use ordinary care, and render aid to an injured student. Docket

No. 7-1 at 6. Washington further avers that JPSD violated its statutory duties under

Mississippi law by failing to prevent "bullying or harassing behavior by school employees or

students," or "report the incident to the appropriate school official." *Id.* at 6-7 (citations

omitted). Against Peterson, Washington also alleges assault, battery, and intentional

infliction of emotional distress claims.

---

[4] Washington argues that she is "not attempting to hold JPSD vicariously liable for Defendant Peterson's criminal acts." Docket No. 21 at 12-13. Rather, she submits that the *Amended Complaint* "assert[s] a claim for respondeat superior and/or vicarious liability against JPSD for Dr. Green's and Mr. Smith's negligence" in their official capacities. *Id.* Because Dr. Green and Mr. Smith have been sued in their official capacities, those claims merge with the claims against JPSD.

To these allegations, JPSD argues that it cannot be held liable for Green's or Smith's alleged negligent acts because neither individual "committed any tortious acts against the Plaintiff." Docket No. 25 at 6. JPSD also submits that discretionary function immunity under Mississippi law precludes it from being held liable for any negligent hiring, supervision, or retention claims. Docket No. 12 at 9.

Upon review, JPSD has persuasively shown under Mississippi law that any duty to investigate was discretionary, and therefore qualifies for immunity under the MTCA. *See City of Jackson v. Sandifer*, 107 So. 3d 978, 984 (Miss. 2013). That claim, will therefore be dismissed.

As for the remaining state law claims, however, the Defendants have not yet shown that the allegations advanced against them fail to state a claim under Mississippi law. In particular, the Defendants may have acted negligently if they hired Peterson knowing that he "had been previously terminated from another educational institution for engaging in inappropriate conduct with students," Docket No. 1-1 at 86, or failed to exercise ordinary care in permitting Peterson to remain in contact with his alleged victim after being notified of the sexual assault allegations. Further proceedings are necessary to resolve those claims.

## IV.    Conclusion

For these reasons, the motions to dismiss at [7] and [14] will be **GRANTED**. The motion to dismiss at [11] is hereby **GRANTED IN PART AND DENIED IN PART**.

**SO ORDERED**, this the 11th day of August, 2023.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE